Roy Lee ADAMSON, Petitioner,

v.

Elbert V. NASH, Warden, Respondent.
No. 14418–1.

United States District Court
W. D. Missouri, W. D.

June 24, 1963.

Roy Lee Adamson pro se.

842

JOHN W. OLIVER, District Judge.

Petitioner, presently an inmate in the Missouri State Penitentiary, has filed a petition for writ of habeas corpus, asking leave to proceed in forma pauperis. Petitioner alleges in conclusory language that the ten year sentence imposed by the Circuit Court of Audrain County, Missouri, after a trial before a jury, was "obtained and rests upon substantial material violations of the Constitutional Rights of the Petitioner".

Elsewhere in the petition it is alleged, again in conclusory language, that petitioner, is being deprived of his liberty "in violation of the 'due process of law' clause of the Fourteenth Amendment to the Constitution of the United States" in that it was the result of an "ex post facto application of RSMo 1959, Section 556.280, as Amended [V.A.M.S.]"; in that the "conviction and sentence [was] rendered by a Court of the State of Missouri which totally lacked proper jurisdiction * * * because the Information * * * fatally fails to aver the essential elements of any violation of criminal law, or any act done against the public interest"; because his "conviction and sentence [was] obtained by means of the use by the State of untrue and false testimony, knowingly adduced by the agents of the State; and further, because of the suppression by the State of the true facts which were favorable to this petitioner".

■ By reading from all four corners of petitioner's pleadings, including various exhibits attached as an appendix, it is apparent that he complains principally about the application of Section 556.280, RSMo 1959, V.A.M.S., to his case and about the alleged failure of the information to comply with the law of Missouri. Petitioner also complains about the treatment given certain testimony· by both the trial court and the Supreme Court of Missouri. The first two questions do not, under the facts alleged and apparent from the record, present any substantial federal question. The question concerning the evidence was fully and fairly dealt with by the Supreme Court of Missouri on petitioner's appeal to that Court as is apparent from the report in petitioner's appeal, reported as State v. Adamson, (S.Ct.Mo.1961) 346 S.W.2d 85. The appeal of petitioner's codefendant, reported as State v. Gillman (S.Ct.Mo. 1962), 354 S.W.2d 843, is not considered as a part of petitioner's record in this case but it reflects similar care on the part of the Supreme Court of Missouri in regard to the trial in which petitioner was convicted. It is frivolous to contend that even a colorable federal question is raised by the allegations of petitioner's complaint in regard to that procedure followed by the State of Missouri.

The point of beginning in this, as in all habeas corpus cases, is Chapter 153 of Title 28 United States Code. The history of Sections 2241 to 2254 of that chapter has been definitely stated in the recent case of Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963). That case noted that the "development of the law of federal habeas corpus has been attended, seemingly, with some backing and filling" but it noted that "the possibly grudging scope given the Great Writ" has been overshadowed by the cases, over the years, that have recognized that vindication of due process is the historic office of that ancient writ. But to say that Noia's case is in the broad spirit of Bushell's case is not to say that the logic of the almost three hundred years of procedural experience with habeas corpus between those two cases is either invalid or that it is today to be ignored. On the contrary, logic and experience is consistent when one views the best of the history of the Great Writ.

In spite of what may have been said in some of the dissenting opinions in Noia, that case made clear, at least to us, that the Supreme Court's "decision * * * swings open no prison gates". Nor, of course, did it shut any prison gates. The Supreme Court recognized that "[t]oday as always few indeed is the number of state prisoners who eventually win their freedom by means of federal habeas corpus" and that "[t]hose few * * * are

persons whom society has grievously wronged".

Noia, dealing with a quite narrow question, reconsidered the procedural rule established by Darr v. Buford, 339 U.S. 200, 70 S.Ct. 587, 94 L.Ed. 761 (1950). It must be remembered that in the Noia case, on the merits, it was "conceded [that Noia had] been the victim of unconstitutional state action" [l. c. 441 of 372 U.S., l. c. 850 of 83 S.Ct., 9 L.Ed.2d 837]. Specifically, and it is of primary importance, the state conviction was "admitted by the State to rest upon a confession obtained * * * in violation of the Fourteenth Amendment" of the Constitution of the United States [l. c. 394 of 372 U.S., l. c. 825 of 83 S.Ct., 9 L.Ed.2d 837] Noia on the point there in issue is, of course, of paramount importance. On the merits of any particular case it has no real significance.

Section 2241, so far as state prisoners are concerned, confers power on the District Courts of the United States to entertain applications for and to grant writs of habeas corpus in connection with prisoners held in state custody "in violation of the Constitution or laws or treaties of the United States". Section 2243 provides that the judge entertaining an application for a writ of habeas corpus shall forthwith either (a) award the writ or (b) issue an order to show cause "*unless* it appears from the application that the applicant or person detained is not entitled thereto".

In Burleson v. United States, W.D.Mo. 1962, 205 F.Supp. 331, we reviewed the history of Section 2255 of Title 28 United States Code, and noted the close historical relationship between that section relating to federal prisoners and the ancient habeas corpus practice. We there stated that: [l. c. 333 of 205 F. Supp.]

"Section 2255 was enacted for the purpose of correcting past abuses of then existing judicial procedure —not to create new ones. After a full review of its history, United States v. Hayman, 342 U.S. 205, 219, 72 S.Ct. 263, 96 L.Ed. 232 (1952),

held that Section 2255 'was passed at the instance of the Judicial Conference to meet practical difficulties that had arisen in administering the habeas corpus jurisdiction of the federal courts'."

We further stated that [l. c. 335 of 205 F.Supp.]:

"Of course, a motion under Section 2255 ought not, any more than should a petition for habeas corpus, 'be scrutinized with technical nicety', Holiday v. Johnston, 313 U.S. 342, 350, 550, 61 S.Ct. 1015, 85 L.Ed. 1392 (1941). But it is one thing to follow that rule and quite another to entertain a Section 2255 motion and require the production of the prisoner at a hearing when such a motion, given the broadest sort of construction, fails to allege specific and detailed facts, which, if true, would entitle the petitioner to relief."

And in Burns v. United States, W.D. Mo.1962, 210 F.Supp. 528, we had occasion to consider the post-sentence remedies in the nature of *coram nobis*. We there commented that "the concern that federal courts do full justice * * * carries with it the further duty that federal courts avoid blurring established procedures with loose language that could but confuse and raise hopes of review of procedures not realistically available." [l. c. 531 of 210 F.Supp.].

And we again noted that the Supreme Court held in Hayman v. United States, supra, that Section 2255 was passed to meet the "practical difficulties" that arose in connection with the old habeas corpus practice. We then suggested that such a holding was "but a gentle way of saying that the procedure under habeas corpus had become so complicated that few people, including particularly the friendless inmates in federal penal institutions, could avoid the procedural pitfalls that were inherent in the ancient system." [l. c. 532 of 210 F.Supp.]

The crux of the problem of post-sentence review of both federal and state prisoners is one of volume. Both the

majority and minority opinions noted various studies made of that problem. (See footnote 45, page 440, and footnotes 2 to 6, inclusive, on pages 446 and 447 of 372 U.S., on pages 850, 852–853 of 83 S.Ct., 9 L.Ed.2d 837.)

The problem of volume does not affect either our power or our duty. That problem does, however, require that we do not abandon time tested procedural requirements that have long enabled judges to sift the wheat from the chaff in order that meritorious applications not "be buried in a flood of worthless ones". Brown v. Allen, 344 U.S. 443, 537, 73 S.Ct. 397, 425, 97 L.Ed. 469 (1953) (concurring opinion).

■ So far as State prisoners are concerned we must keep in primary focus that the power and concern of a Federal District Court is conferred by Section 2241 of Title 28 United States Code. Jurisdiction is confined, so far as State prisoners are concerned, to those State prisoners allegedly "in custody in violation of the Constitution or laws or treaties of the United States". Noia emphasizes that "there is nothing novel in the fact that today habeas corpus in the federal courts provides a mode for the redress of denials of due process of law" and that "[v]indication of due process is precisely its historic office" [l. c. 402 of 372 U.S., l. c. 829 of 83 S.Ct., 9 L.Ed.2d 837].

■ But Noia also repeatedly points out that it is with *Federal* constitutional rights that we are concerned. The right to seek Federal habeas corpus is confined to the assertion and establishment of the violation of the Constitution or laws or treaties of the United States. Power to treat with that federal question is not "a stage of the state criminal proceedings"; nor does an application for federal habeas corpus serve as "an appeal" from a State criminal proceeding (see page 424 of 372 U.S., page 841 of 83 S.Ct., 9 L.Ed.2d 837).

Section 2243 of Title 28, when supplemented by Sections 2246 through 2249, all of Title 28 United States Code, codifies the traditional practice under the best of past habeas corpus procedure. That practice, so far as prisoners in federal custody are concerned, was also codified in Section 2255 which provides that if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief" the court may so determine the motion on the basis of such data without either issuing a rule to show cause or requiring the production of the prisoner at a hearing.

■ That procedure, both in its traditional form and in its codified form, requires the court to dispose of the matter as law and justice require and is not to be construed as a license to reject all motions and applications out of hand. The procedural practice is based on the idea that neither law nor justice requires either the issuance of a rule to show cause or the holding of an unnecessary hearing if, but only if, it is conclusively apparent that a particular petition, when given the broadest sort of construction, fails to allege sufficient specific and detailed facts which, if true, would entitle the petitioner to relief. If a particular application alleges facts which conclusively determine that no substantial federal question can be involved, or if the alleged federal question is but a frivolous one within the meaning of the law, or if such allegations establish that it is beyond the remotest sort of possibility that relief must necessarily be denied under any factual circumstances that might be developed by a hearing, then the same summary disposition is warranted.

■ Noia pointed out that the Supreme Court has "consistently held that federal court jurisdiction is conferred *by the allegation* of an unconstitutional restraint". Such an allegation must, under the long established habeas corpus procedure, be something more than a mere conclusory allegation. Insistence upon minimum factual allegations must not, of course, be used as a device to erect technical hurdles in front of any inmate in any correctional institution. But this is not to say that a particular inmate should not be required to outline

the facts upon which his claim is predicated so that such a claim may be intelligently and fairly dealt with.

An application of the principles stated makes it clear that petitioner in this particular case seeks to have this Court review the same questions of State law that were determined adversely to him by the Supreme Court of Missouri. The allegations concerning any alleged violation of the federal Constitution are completely conclusory and present no more of a factual or legal issue for adjudication than did the allegations contained in the Section 2255 motion that was before us in Burleson v. United States, supra.

Inherent also in this whole area of the law is the danger that a petitioner may unwittingly run afoul of the laws of the United States relating to perjury and subornation of perjury. See Title 18 United States Code, Sections 1621 and 1622. The danger to a particular petitioner is enhanced in many cases by reason of the fact that someone else is the actual author of his petition. See further in this connection our comment in Earnest Eugene Taylor v. United States, W.D.Mo.1963, 215 F.Supp. 336, where we stated that we feel that "it is eminently unfair to permit any inmate * * * to unwittingly run afoul of the laws relating to perjury and subornation of perjury (Title 18 United States Code, §§ 1621 and 1622), without a full and fair understanding that the statutes relating to those subjects afford the only real protection against a prisoner who desires 'to swear to Munchausen tales to use the language of the dissenting opinion in Machibroda v. United States, 368 U.S. 487, 497, 82 S.Ct. 510 [515], 7 L.Ed.2d 473".

See also Hamby v. United States, W.D. Mo.1963, 217 F.Supp. 318, for our most recent discussion of this matter as it arises in connection with Section 2255 motions.

Because of these considerations we adopt the practice and follow the procedure that we outlined in Burleson and the other cases above cited. We permit petitioner to proceed in forma pauperis but deny petitioner's motion for a writ of habeas corpus without prejudice. In accordance with that practice petitioner is given leave, should he care to exercise it, to amend his motion to the end that specific and detailed facts be set forth in connection with the conclusions that he has attempted to plead in regard to any violation of the Constitution or laws or treaties of the United States.

Accordingly, petitioner's motion to proceed in forma pauperis should be and is hereby sustained. Petitioner's petition for a writ of habeas corpus should be and is hereby denied without prejudice with leave to amend as above stated.

It is so ordered.